[Cite as *State v. Smith*, 2026-Ohio-1803.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
RICHLAND COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO, | Case No. 2025 CA 0029 |
| Plaintiff - Appellee | <u>Opinion & Judgment Entry</u> |
| -vs- | Appeal from the Court of Common Pleas of Richland County, |
| BRET E. SMITH, | Case No. 2024 CR 0423-N |
| Defendant - Appellant | Judgment:  Reversed and Remanded |
| | Date of Judgment:  May 15, 2026 |

BEFORE: Andrew J. King, Kevin W. Popham, and David M. Gormley, Judges

APPEARANCES: Jodie M. Schumacher (Richland County Prosecuting Attorney) & Megan E. Hobart (Assistant Prosecuting Attorney), Mansfield, Ohio, for Plaintiff-Appellee; Joseph C. Patituce (Patituce & Associates LLC), Strongsville, Ohio, for Defendant-Appellant.

*Gormley, J.*

**{¶1}**   Defendant Bret Smith was found guilty by a jury on three counts of rape and two counts of gross sexual imposition (GSI).  He now appeals, arguing that he was denied a fair trial because the jury heard a witness testify at length about Smith's pre-arrest invocation of his right to counsel.  Smith argues, too, that the State presented insufficient evidence to support the two GSI charges.

**{¶2}**   We agree with Smith that the State failed to present sufficient evidence on the two GSI charges, and we also find that the trial court committed plain error by allowing the jury to hear that (1) Smith retained an attorney before he was arrested, (2) the attorney told detectives on the case that any requests from the detectives to speak with Smith should be directed to the attorney, and (3) no attorney representing Smith ever provided a statement from Smith about the facts at issue in the case.  The trial judge

provided no cautionary instruction to the jury when that testimony was presented, and the judge even admitted as an exhibit a letter from Smith's lawyer to detectives directing the detectives to contact the lawyer before trying to interview Smith.

{¶3} We therefore reverse Smith's two GSI convictions and grant judgments of acquittal in his favor on those charges, and we remand the case to the trial court for a new trial on the three counts of rape.

**The Key Facts**

{¶4} In June 2024, a Richland County grand jury indicted Smith on five counts: two counts of rape under R.C. 2907.02(A)(1)(b) (sexual conduct with a person under age 13), one count of rape under R.C. 2907.02(A)(2) (sexual conduct with another person, and the defendant purposely compelled that other person to submit by force or threat of force), and two counts of gross sexual imposition under R.C. 2907.05(A)(1) (sexual contact with another person, and the defendant purposely compelled that other person to submit by force or threat of force). The charges concerned Smith's two adopted daughters, N.S. and R.S. (N.S. — the younger of the two — was the alleged victim of the three alleged rapes, while her older sister R.S. was the alleged victim of the two alleged GSI offenses.)

{¶5} Though R.S. — who was 18 at the time of the trial — was one of the State's witnesses at the trial, her testimony was not helpful to the State's case. She testified that Smith had never inappropriately touched her, and she claimed that she had never been sexually abused. And even though R.S. did tell the jury that Smith had touched her buttocks one time, she claimed that the contact had been accidental.

{¶6} The State, in an effort to impeach R.S.'s testimony, questioned her about some of her own earlier out-of-court statements, some of which she had typed and sent

using the Snapchat messaging platform and others of which were captured on video recordings when a children's-services caseworker and a detective each interviewed R.S. before the trial. Portions of R.S.'s Snapchat messages were read aloud during the prosecutor's direct examination of R.S., and the record suggests that they may have been shown to jurors then too. And R.S.'s recorded interviews were played for the jury during the direct examinations of both the children's-services staffer and the detective.

{¶7} Defense counsel raised a contemporaneous objection to the use of the Snapchat messages and also to the playing of the detective's recorded interview of R.S. Then at the close of the State's case, defense counsel again objected to the admission of the Snapchat messages as well as both of the video recordings. The trial judge overruled all of those objections and admitted the video recordings as well paper copies of R.S.'s Snapchat messages. Whether the judge's ruling was based on the view that those items could be considered by the jury solely for impeachment purposes is unclear from the record, but we do know that the judge never told jurors to treat those items differently from any other information that the jurors had seen or heard during the trial.

{¶8} The last of the State's seven witnesses at trial was a detective, and he testified about various persons with whom he had spoken during his investigation. The prosecutor then asked the detective if he had "ma[d]e any attempts to reach out to the defendant." He had not, the detective replied. "Why didn't you do that?" the prosecutor asked. The detective then explained that very soon after he had started investigating the allegations that ultimately led to the filing of the criminal charges at issue in the case, the detective had received a faxed letter from an attorney indicating that Smith had retained the attorney, "and if I want to talk to his client[,] I need to go through him."

**{¶9}** Next, the prosecutor showed a copy of that faxed letter to the detective and, through additional questions, drew out testimony from the detective about the name of the attorney who had sent the letter, about the fact that Smith was at the time of the trial represented by a different lawyer, and about the fact that Smith's lawyers had never — as the prosecutor phrased the question — "reach[ed] out" to the detective to speak about the allegations against Smith. As the prosecutor wrapped up questions to the detective about the letter from Smith's first attorney and about any steps that the detective took in response to that letter, the detective told jurors that his "next step" was to "put everything together" and ask the county prosecutor's office to review his case file. "[Y]ou turned it over and you basically request[ed] charges?" the prosecutor asked. "Correct," the detective testified.

**{¶10}** As that testimony was presented, defense counsel did not object. The trial judge in turn gave no limiting instruction to the jury about Smith's right to remain silent and his right to legal representation, and the judge never told jurors that they could not discuss or consider Smith's pre-arrest exercise of those rights and never explained to the jurors that no adverse inferences could be drawn by them against Smith from the fact that neither he nor his attorneys had spoken with the detective. The faxed letter that the detective had described was admitted as an exhibit — again, with no objection from defense counsel — and that letter from Smith's first attorney to the detective was provided to the jurors for their review during their deliberations.

**{¶11}** Smith's trial counsel, during cross-examination of the detective, asked additional questions about the letter that the detective had received from one of Smith's attorneys. Those questions and the detective's answers refocused the jury's attention on the fact that the detective had received a faxed letter from Smith's attorney, that the letter

indicated to the detective that any communications should go through Smith's attorney, and that the detective never reached out to Smith's attorney by phone, email, or fax.

{¶12} And during the State's redirect examination of the detective, the State asked the detective how often a suspect and a suspect's attorney meet with the detective after the detective receives a letter like the one Smith's attorney faxed to the detective. The detective answered that he has "never had an attorney come in and sit down with [him]." The detective continued, elaborating that attorneys ordinarily tell the detective that the suspect will not be speaking with the detective.

{¶13} Once the State completed its initial presentation of witness testimony and exhibits, Smith himself opted to testify, and he denied the allegations against him. The topic of the letter and its contents came up yet again when Smith, in response to questions from his defense counsel, told jurors that he had retained an attorney before any charges were filed, that the attorney faxed a letter to the detective, and that the faxed letter informed the detective to communicate with Smith's attorney.

{¶14} The jury found Smith guilty on all five counts, and the trial judge imposed prison terms on the charges. Smith now appeals.

## The GSI Charges Were Not Supported by Sufficient Evidence

{¶15} We turn first to Smith's argument that the State failed to present sufficient evidence on either of the two GSI charges.

{¶16} "When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed but, rather, whether the evidence, 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "'The relevant inquiry is whether, after viewing the

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Howell*, 2020-Ohio-174, ¶ 28 (5th Dist.), quoting *Jenks* at paragraph two of the syllabus. A "verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{¶17} To prove the two R.C. 2907.05(A)(1) gross-sexual-imposition charges — one alleging that the crime had occurred in 2022 and the other alleging that a second similar offense had occurred in 2023 — the State had to establish, beyond a reasonable doubt, that Smith (1) had sexual contact with R.S., and (2) purposely compelled R.S. to submit by force or threat of force. "Sexual contact," in turn, is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). The State thus bore the burden of producing evidence not only that Smith touched an erogenous zone of R.S., but also that he did so for the purpose of sexual arousal or gratification and that he purposely compelled her submission through force or the threat of force.

{¶18} The State's case relied on two categories of information: (1) R.S.'s in-court testimony and (2) some out-of-court statements that she made. We address each in turn, starting with the latter.

The Out-of-Court Statements

{¶19} The State relies on three categories of out-of-court statements: the Snapchat messages exchanged between R.S. and her mother, a recorded interview between R.S. and a children's-services caseworker, and a recorded interview between R.S. and a detective.

*Some Hearsay Basics*

**{¶20}** In criminal cases, the admission of an out-of-court statement against the defendant implicates two potential issues. First, under the Confrontation Clause of the Sixth Amendment, a defendant has the right to confront his or her accusers through cross-examination. And second, under the hearsay rule, an out-of-court statement is not admissible for the truth of the matter asserted unless it falls under some exception.

**{¶21}** The first of those is not at issue in this case, because R.S. testified at the trial and was subject to cross-examination by defense counsel there. *See United States v. Underwood*, 129 F.4th 912, 940 (6th Cir. 2025) ("A defendant's rights under the Confrontation Clause are satisfied where the declarant of the out of court statement at issue is also a witness who is under oath and subject to cross examination at trial"); *Crawford v. Washington*, 541 U.S. 36, 59, fn. 9 (2004) ("The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it").

**{¶22}** As for the second of those issues — hearsay — the long-familiar rule tells us that hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). *See also State v. Leigh*, 2023-Ohio-91, ¶ 46 (2d Dist.) ("An assertion for hearsay purposes simply means to say that something is so, e.g., that an event happened or that a condition existed") (quotations omitted).

**{¶23}** Hearsay is generally inadmissible unless a recognized exception applies. Evid.R. 802. *See also State v. Williams*, 2024-Ohio-6026, ¶ 50 (8th Dist.) ("while the trial court has discretion to admit or exclude relevant evidence, it has no discretion to admit hearsay because Evid.R. 802 mandates the exclusion of hearsay unless any

exceptions apply"); *State v. Lusher*, 2012-Ohio-5526, ¶ 49 (4th Dist.) ("a trial court's discretion to admit or exclude relevant evidence does not include the discretion to admit hearsay; Evid.R. 802 mandates the exclusion of hearsay unless any exceptions apply") (brackets and quotations omitted).

{¶24} "[W]e review de novo the trial court's decision regarding whether a statement is hearsay or nonhearsay." *Williams* at ¶ 50. *See also State v. Dotson*, 2019-Ohio-2393, ¶ 49 (11th Dist.) ("A trial court's ruling on a hearsay objection is . . . reviewed de novo"); *State v. Richcreek*, 2011-Ohio-4686, ¶ 32 (6th Dist.) ("On appeal, challenged hearsay is subject to de novo review under the applicable hearsay rule, rather than the more deferential review employed for discretionary rulings"); *State v. Sorrels*, 71 Ohio App.3d 162, 165 (1st Dist. 1991) ("Since Evid.R. 802 specifically provides that 'hearsay is not admissible,' the trial court's decision to admit hearsay is not governed by the test of abuse of discretion").

{¶25} An out-of-court statement that is inadmissible under the hearsay rule and its exceptions may nonetheless be admissible for a non-substantive purpose, such as impeachment. *State v. Crossen*, 1988 Ohio App. LEXIS 4447, *5 (5th Dist. Oct. 18, 1988). *See also State v. Jackson*, 2023-Ohio-2193, ¶ 41 (3d Dist.) ("A statement is, by definition, not hearsay when it is offered for a purpose other than to prove the truth of the matter asserted") (brackets omitted); *State v. Shropshire*, 2017-Ohio-8308, ¶ 20 (8th Dist.) ("Statements constitute hearsay only if they were offered to prove the truth of the matters asserted in those statements. If those statements were offered for some other purpose, they are not inadmissible hearsay").

{¶26} A statement admitted for impeachment purposes, though, is not admitted for its truth, and a jury may consider such a statement solely as a tool for evaluating a

witness's credibility and not as substantive proof of the events described in the statement. *State v. West*, 2017-Ohio-4055, ¶ 57 (5th Dist.). *See also State v. Powell*, 2023-Ohio-2770, ¶ 52 (8th Dist.) ("Generally, prior inconsistent statements constitute hearsay evidence and thus are admissible only for the purpose of impeachment") (quotations omitted); *Richcreek*, at ¶ 26, fn. 2 ("A limiting instruction is particularly critical when the statement's content might overtly militate toward inferences of guilt. It is the court's instruction [that] . . . operates to contain the statement to its non-hearsay character and function").

### *The Snapchat Messages*

{¶27} Here, the Snapchat communications between R.S. and her mother are out-of-court statements not covered by any recognized hearsay exception. In those messages — which were the subject of some questions posed to R.S. during the trial, and copies of which were admitted as exhibits for the jurors to review during deliberations — R.S. tells her mother in October 2023 that R.S.'s sister has revealed that Bret Smith has been "touching us." And when the mother responds, "He's been touching you [?]," R.S. answers "Yes."

{¶28} At most, that out-of-court assertion was admissible to impeach or rehabilitate R.S. on the witness stand when R.S. testified that Bret Smith had never intentionally touched her inappropriately, and those Snapchat messages could not be offered as evidence that R.S. had in fact been touched by Bret Smith. Yet because the trial judge gave no explanation to jurors about the messages' limited use, and because the trial judge admitted copies of the messages as exhibits that jurors could review during deliberations, we assume that jurors had no understanding about any for-impeachment-

purposes-only guardrails that the judge may have had in mind when he overruled defense counsel's objections to both the use and the admission of those exhibits.

{¶29} In the end, whatever the jurors may have thought about the Snapchat messages, we readily conclude that the trial judge should have sustained — on hearsay grounds — defense counsel's objections to them, and no statements in them can be viewed by us as substantive evidence that might support the GSI charges.

*The Two Recorded Interviews of R.S.*

{¶30} As for R.S.'s recorded interviews — one of which was conducted by the children's-services caseworker, and the other of which was conducted later by a detective — we need not concern ourselves with the former, as R.S. said nothing to the caseworker about having been touched by Bret Smith. Instead, R.S. told the caseworker that Smith had never touched her and had never forced her to touch him. (The interview consisted largely of R.S. relaying what N.S. had disclosed to her about Smith's touching of N.S.)

{¶31} When R.S. was interviewed later by the detective in December 2023, she did say that Smith had touched her breasts multiple times over several years and that he had grabbed her buttocks on one occasion.

{¶32} But was that out-of-court statement — to which defense counsel objected both when the State proposed to play the video recording and when the State moved at the close of the evidence to admit the recording as an exhibit — admissible under any hearsay exceptions? We conclude that it was not.

{¶33} In its appellate brief, the State does not identify any hearsay exception that might have justified the trial judge's decision to admit — over defense counsel's hearsay objection — the detective's recorded interview of R.S., and in fact the State says in its brief here that the interview "was used for impeachment purposes" and "was not offered for

the truth of the matter asserted." That may have been true, but — as with the Snapchat messages — the trial judge never told the jurors any such thing either when the judge allowed jurors to watch and listen to the entire recorded interview during the trial or when the judge admitted the recording as an exhibit so that jurors could watch and listen to it again if they chose during deliberations.

{¶34} Though the State does not tell us what hearsay exception might have applied to the detective's recorded interview of R.S., we ourselves have scoured Evidence Rule 803's hearsay exceptions in search of any conceivable rationale for allowing jurors to consider for the truth the out-of-court statements made by R.S. during that pretrial interview. We can find none.

{¶35} The best straw that the State might have grasped is Evidence Rule 803(4), which of course recognizes a hearsay exception for statements made for purposes of medical diagnosis or treatment. Yet the detective said nothing during the trial about having been trained to diagnose or treat any physical or mental-health conditions, and he in fact explained to jurors that his role was to investigate possible crimes allegedly committed by Bret Smith. And the interview in question took place at the sheriff's office in Richland County rather than in a medical setting. No medical history was taken, no physical complaints were elicited, and no diagnosis or treatment plan emerged from the detective's questioning of R.S. Neither R.S. — who was 17 at the time of the interview — nor any other trial witness indicated that R.S. had sought or needed any sort of diagnosis or treatment when she spoke with the detective about events that had allegedly occurred at least three weeks earlier. By the time of the interview, R.S. had no ongoing contact with Smith, no immediate safety concern existed, and no medical emergency was alleged or suspected.

{¶36} Because no hearsay exception applies to the detective's interview of R.S., that interview could at most have been used by the State during the trial to impeach R.S.'s testimony. Defense counsel's hearsay objection to the admission on substantive grounds of any statements made by R.S. during that interview should therefore have been sustained, and none of those statements can be considered by us as substantive evidence that might support the GSI charges. (And of course the trial judge should have instructed the jury that any statements made by R.S. during the detective's interview of her could be considered by jurors solely for impeachment purposes and not for the truth of any assertions that R.S. made to the detective.)

{¶37} But were the trial judge's erroneous rulings on defense counsel's hearsay objections harmless? After all, "[t]he erroneous admission of hearsay statements . . . does not necessarily provide grounds for reversal if the error was harmless." *State v. Prather*, 2023-Ohio-784, ¶ 40 (1st Dist.). And a trial court's improper admission of evidence may be viewed as harmless "when, after the tainted evidence is removed, the remaining evidence is overwhelming." *State v. Morris*, 2014-Ohio-5052, ¶ 32. *See also Williams*, 2024-Ohio-6026, at ¶ 51 (8th Dist.) ("In determining whether an error in the admission of evidence is harmless, the reviewing court must find that there is no reasonable possibility that the evidence contributed to the defendant's conviction"); *State v. Brown*, 2020-Ohio-3614, ¶ 29 (3d Dist.) ("Generally, where other admissible substantive evidence mirrors improper hearsay, the error in allowing the hearsay is deemed harmless, since it would not have changed the outcome of the trial") (quotations omitted).

{¶38} As we explain below, the improper admission of R.S.'s out-of-court statements was not harmless, given that the State's admissible evidence supporting the GSI charges cannot rightly be described as overwhelming. In fact, the State provided no

admissible evidence at all to support the force-or-threat-of-force element for the GSI charges.

R.S.'s Trial Testimony

{¶39} No witness other than R.S. offered any trial testimony about Bret Smith's alleged sexual contact with her. And in her testimony, R.S. told jurors that Smith had never inappropriately touched or sexually abused her.

{¶40} To be sure, R.S. did say in her testimony that Smith had, on a single occasion, touched her buttocks. That contact had been accidental, she explained, and we conclude that her testimony cannot support either GSI conviction.

{¶41} Yet even if a rational juror could have disbelieved R.S.'s characterization of the touch as accidental and could instead have credited the State's view that the contact had been made by Smith for the purpose of sexual gratification, the State offered no proof at all on the R.C. 2907.05(A)(1) element of force or threat of force.

{¶42} Of course, force in the parental or authority-figure context may be subtle or slight and need not involve overt physical compulsion. *State v. Eskridge*, 38 Ohio St.3d 56, 59 (1988); *State v. Pollard*, 2009-Ohio-2313, ¶ 36 (5th Dist.). But the State, to prevail at trial, must, in the absence of any use of force, still show that the victim's will was overcome by fear or duress. *Pollard* at ¶ 40; *State v. Stegner*, 2024-Ohio-4750, ¶ 30 (5th Dist.). *See also State v. Torres*, 2023-Ohio-1406, ¶ 48 (4th Dist.) ("some amount of force must be proven beyond the force inherent in the crime itself").

{¶43} R.S.'s trial testimony supplied no evidence from which a rational juror could conclude that her will was overcome by fear or duress. She described a single touch of her buttocks and characterized it as accidental. She did not describe any command, any physical positioning, any manipulation of her clothing or body, any exploitation of her

position in the household, any threats or admonitions to keep quiet about the touching, any promises of rewards or gifts for having submitted to the touching, or any other circumstance from which compulsion could be inferred. *See Pollard* at ¶ 47 (force established where a defendant pinched the victim's breast during a confrontation in which he angrily dictated what undergarments she could wear, and that victim testified that she felt she had to obey him because he was her father); *Stegner* at ¶ 42-46 (force established where father conditioned permission to leave the house on submission to touching, manipulated the victim's clothing to access her breasts, and physically confined her against furniture).

{¶44} The State likewise offered no other admissible substantive evidence — circumstantial or otherwise — tending to show that Smith used his parental authority to compel R.S.'s submission in connection with the alleged touching. Without that sort of evidence, the jury was left to speculate about the circumstances surrounding the contact, and speculation cannot substitute for proof beyond a reasonable doubt. *State v. Wilson*, 2024-Ohio-2257, ¶ 90 (8th Dist.). See also *State v. Bradley*, 2024-Ohio-5225, ¶ 83 (7th Dist.) ("Criminal convictions cannot rest upon mere speculation") (quotations omitted).

{¶45} Setting aside, then, the out-of-court hearsay information from R.S. that jurors could have considered for, at most, impeachment purposes only, and viewing R.S.'s trial testimony in a light most favorable to the State, we conclude that no rational juror could have found that the State proved beyond a reasonable doubt the essential elements of gross sexual imposition on even one count (let alone two counts).

{¶46} Smith's challenge to the sufficiency of the evidence on the two GSI charges is sustained, and his convictions on those charges are reversed.

{¶47} And "when an appellate court reverses for insufficiency of the evidence, the Double Jeopardy Clause bars retrial." *City of Girard v. Giordano*, 2018-Ohio-5024, ¶ 10. *See also State v. Burst*, 2025-Ohio-2277, ¶ 23 (9th Dist.) ("because reversal for insufficiency is effectively an acquittal, retrial is prohibited by double jeopardy") (brackets omitted). Smith cannot be retried on either of the GSI charges.

**The State's Introduction of Evidence Focusing on Smith's Pre-Arrest Invocation of His Right to Remain Silent and His Right to Counsel Warrants the Reversal of His Rape Convictions**

{¶48} Smith's principal argument here is that the State violated his right to a fair trial when — during the State's case-in-chief — the government introduced testimony and a letter establishing that Smith never spoke with detectives and that he had retained an attorney before he was arrested and charged.

{¶49} Unlike with the hearsay information addressed above, though, defense counsel at trial never objected as the prosecutor questioned the detective and elicited from him the details about Smith's retention of one lawyer before the trial and another lawyer for the trial itself, about the first lawyer's letter to detectives advising them that any law-enforcement requests to speak with Smith should be funneled through the lawyer, and about the lawyers' failure to provide any information to detectives about the alleged crimes that the detective was investigating. Defense counsel likewise failed to object to the admission of the lawyer's letter that the detective had described.

{¶50} An error "that was not called to the attention of the trial court at a time when the error could have been avoided or corrected by the trial court" is deemed forfeited absent plain error. *State v. Haudenschild*, 2024-Ohio-407, ¶ 15 (5th Dist.). Therefore, we review only for plain error any concerns now raised by Bret Smith about the detective's testimony and about the admission of the letter sent by Smith's first lawyer.

{¶51} "To constitute plain error, an error 'must be on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection.'" *State v. Bright*, 2025-Ohio-725, ¶ 10 (5th Dist.) quoting *State v. Dunlap*, 2004-Ohio-6652, ¶ 34 (8th Dist.). "'Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Id.,* quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶52} The Supreme Court of Ohio has explained that "the state's substantive use of the defendant's pre-arrest, pre-*Miranda* silence substantially subverts the policies behind the Fifth Amendment privilege against self-incrimination and is not a legitimate governmental practice." *State v. Leach*, 2004-Ohio-2147, ¶ 37.

{¶53} And in the absence of overwhelming evidence of guilt, the violation is prejudicial, necessitating the reversal of the conviction. *State v. Whitaker*, 2008-Ohio-4149, ¶ 36 (4th Dist.). *See also State v. Estepp*, 2007-Ohio-2596, ¶ 32 (2d Dist.) (finding plain error and reversing a defendant's convictions where (1) defense counsel did not object when the testifying officer told jurors about his repeated failed attempts to interview the defendant and (2) overwhelming evidence was lacking); *State v. Shaffer*, 2004-Ohio-3717, ¶ 19 (5th Dist.) (finding plain error and reversing a defendant's convictions where (1) defense counsel did not object when the investigating officer testified that the defendant's mother told officers that an attorney had advised the defendant not to speak to the officer about the allegations against him and (2) the evidence against the defendant was not overwhelming).

{¶54} The State did, in our view, use Smith's silence and his invocation of his right to counsel as substantive evidence. What was the point of asking the detective about

Smith's hiring of a lawyer during the investigation, about the lawyer wanting any law-enforcement requests for interviews of Smith to go through the lawyer, and about the failure of Smith's lawyers — and presumably Smith himself — to speak with detectives about the allegations? Jurors did not need to hear any of that information, but the State made sure that jurors heard all of it.

{¶55} But was this information – as the State now claims – a mere explanation of the course of the detective's investigation? No. Smith's decision to hire a lawyer was not part of the investigation. The timing of Smith's decision to hire a lawyer was not part of the investigation. His decision to hire one lawyer during the investigation and another one for the trial was not part of the investigation. The first lawyer's written communication indicating that any law-enforcement requests to interview Smith should be directed not to Smith himself but to the lawyer was not part of the investigation. And the failure of any of Smith's lawyers to reach out to the detective was not part of the steps taken by the detective during the investigation. As the court said in *Leach* about the introduction of evidence indicating that the defendant in that case wanted to speak with an attorney before speaking with the police, this kind of information "[i]s not material to the jury's determination of guilt or innocence" and it "do[es] not . . . explain[] the course of the investigation." *Leach*, 2004-Ohio-2147, at ¶ 32.

{¶56} Our court and others have explained that prosecutors cannot present this kind of evidence to juries. See, e.g., *State v. Edmonds*, 2018-Ohio-2832, ¶ 16 (5th Dist.) ("The State may not use a defendant's silence to lead the jury to the conclusion that innocent people speak to the police to clear up misunderstandings, while guilty people consult with their attorneys"); *State v. Plott*, 2017-Ohio-38, ¶ 86 (3d Dist.) ("Use of a defendant's silence in the State's case-in-chief puts a defendant in the position of having

to choose between allowing a jury to infer guilt from his silence or being forced to take the stand to explain his prior silence, thereby surrendering his right not to testify"); *State v. Neal*, 2016-Ohio-64, ¶ 33 (4th Dist.) ("To allow the use of silence in the state's case-in-chief would force defendants either to permit the jury to infer guilt from their silence or surrender their right not to testify and take the stand to explain their prior silence") (brackets, quotations, and ellipses omitted).

{¶57} And the detective's testimony about Smith's pre-arrest invocation of his right to counsel was neither passing nor inadvertent. During direct examination, the State established that the detective, as part of his investigation, interviewed both alleged victims as well as at least one other person who ended up testifying at the trial. The State then pivoted to asking whether the detective had made any attempts to reach out to Smith. The detective's answer — that counsel had intervened via letter before the detective could even attempt to contact Smith — set up the very contrast that the State evidently wanted the jury to understand.

{¶58} The State went even further, asking the detective to identify and authenticate the letter from Smith's first attorney, and later the State moved for the admission of that letter, presumably so jurors could study it during deliberations. The prosecutor's questions and the detective's answers highlighted how quickly Smith hired an attorney once the allegations against him came to light, made clear to jurors that Smith's accusers were forthcoming and that Smith himself was not, and pointed out that Smith had retained at least two lawyers, neither of whom ever offered any information to detectives about the case. Even on redirect examination, the State mentioned the letter again, asking the detective how often a defendant and his or her attorney meet with him after a lawyer has sent that kind of letter.

{¶59} The trial court's admission of the attorney's letter as an exhibit for the jurors to review during deliberations is particularly jarring to us, as it gave jurors a tangible reminder that Smith had invoked his right to counsel and his right to remain silent even before the lead investigator had spoken with any potential witnesses.

{¶60} Furthermore, the evidence against Smith was not so overwhelming as to render harmless the State's introduction of testimony and an exhibit informing jurors about Smith's pre-arrest silence. *See Shaffer*, 2004-Ohio-3717, at ¶ 21 (5th Dist.) (reversing where the evidence amounted to a credibility contest with no physical evidence linking the defendant to the offense); *State v. Pence*, 2013-Ohio-1388, ¶ 20 (12th Dist.) (cautioning that credibility-only cases without physical evidence can lack the overwhelming proof needed to absorb error).

{¶61} The State's case rested on the credibility of its witnesses, particularly N.S., who was 15 at the time of the trial and was the alleged victim for the rape counts. The State offered no biological evidence such as DNA linking Smith to the alleged rapes, no trace evidence from clothing or carpet fibers, no digital evidence from computers or phones, and no other physical evidence corroborating the allegations. While N.S. did undergo a sexual-assault examination in which she described the alleged abuse, the examination itself did not yield any physical findings linking Smith to the offenses, which had allegedly occurred at least 15 months before the trial. The case thus turned on whether the jury believed the testimony presented.

{¶62} The error here was palpable. The Supreme Court's prohibition in *Leach* is neither novel nor ambiguous, and the State's conduct — culminating in the admission of the attorney's letter itself — should have been apparent to the trial court without objection. And in a case devoid of physical evidence, where the jury's verdict turned

entirely on the accuracy and believability of witnesses' testimony, we cannot characterize as harmless the State's presentation of testimony letting jurors know that Smith promptly hired a lawyer and clammed up while the persons whom the State called as witnesses agreed to talk with detectives before testifying in court.

**{¶63}** In the end, of course, jurors did hear from Smith, as he chose to testify at the trial. One can only wonder, though, whether he might have made a different choice had the State not emphasized his pre-arrest silence and his early hiring of an attorney. The detective was the State's final witness during the State's case-in-chief, so it was his testimony perhaps most clearly echoing in jurors' ears — and those of Smith himself — when he had to make a final decision about whether to testify.

**{¶64}** To be sure, the error likely could have been averted had the trial judge promptly intervened when the detective started testifying about the letter from Smith's first attorney. If the trial judge had interrupted the questioning at that point and instructed the jurors that Smith, both before and after any charges were filed against him, (1) had a constitutional right to consult with an attorney, (2) had a constitutional right to remain silent, and (3) had no obligation at any point, whether on his own or through his attorney, to say anything to law-enforcement officers, and had the judge told jurors that they were not permitted to consider, for any purpose, the fact that Smith hired an attorney and did not speak with any law-enforcement officers, the issue could have been put to rest. Giving prompt instructions like those and then telling the prosecutor to pursue a different line of inquiry could very well have mitigated any harm from the detective's first answer or two.

**{¶65}** Yet here we are. Smith's first assignment of error is sustained, and his convictions on the three rape charges are reversed.

**{¶66}** In light of our decision on that issue, we need not address Smith's other arguments, which focus on the alleged ineffectiveness of defense counsel at trial, the State's introduction of what Smith characterizes as irrelevant and unfairly prejudicial evidence, and an alleged error in the sentence.

**{¶67}** For the reasons explained above, the judgment of the Court of Common Pleas of Richland County is reversed. The case is remanded for a new trial on the rape charges. Any court costs are waived.

By: Gormley, J.;

King, P.J. and

Popham, J. concur.